IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEVONNE UDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 321-016 |
| | ) | |
| EDWARD WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Calhoun State Prison in Morgan, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility ("Wheeler") in Alamo, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 45), Plaintiff's motion to dismiss be **DENIED**, (doc. no. 50), Plaintiff's motion for Payment Obligation be **DENIED**, (doc. no. 53), and a final judgment be **ENTERED** in favor of Defendant, and this civil action be **CLOSED**.

**I.   PROCEDURAL BACKGROUND**

Plaintiff initiated this action on February 22, 2021, and filed an amended complaint on March 25, 2021, naming the following Defendants: (1) Warden Vance Laughlin, (2) Luther Wilkes,[1] and (3) Edward Williams. (Doc. no. 7, pp. 2-4.)  Because he is proceeding IFP, the

---

[1] Plaintiff misspelled his last name as Wilkels. (Doc. no. 45-1, p. 2.)

1

Court screened Plaintiff's Amended Complaint on May 25, 2021, and found Plaintiff had arguably stated a viable Eighth Amendment claim for deliberate indifference against Defendant Williams. (Doc. no. 15.) In a simultaneously entered Report and Recommendation ("R&R") the Court recommended dismissal of Defendants Laughlin and Wilkes as well as all official capacity claims for money damages against Defendant Williams. (Doc. no. 13.) Though the Court informed Plaintiff he had until June 11, 2021, to file objections to the R&R, (doc. no. 14), he filed no objections. Accordingly, on June 21, 2021, United States District Judge Dudley H. Bowen dismissed Defendants Laughlin and Wilkes and official capacity monetary damage claims. (Doc. no. 18.) On September 13, 2021, Plaintiff filed a motion to amend his complaint to reassert the already dismissed claim against Defendant Wilkes. (Doc. no. 31.) The Court denied his motion to amend as futile. (Doc. no. 33.)

Defendant Williams answered the complaint on July 13, 2021, and the Clerk issued a Scheduling Notice setting deadlines. (Doc. nos. 22, 25.) The case proceeded through the standard discovery period, during which Defendant took Plaintiff's deposition. (Doc. no. 45-4, Udell Dep.) Defendant timely filed a motion for summary judgment, and the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. nos. 45, 46.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[2] On June 21, 2022, Plaintiff responded with a statement of material facts and a

---

[2]The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its May 25, 2021 Order directing service of Defendant Williams. (Doc. no. 15, p. 5.)

motion to dismiss the motion for summary judgment.[3]  (Doc. nos. 49-50.)  Defendant filed a reply, and Plaintiff filed a surreply.  (Doc. nos. 51-52.)  Finally, Plaintiff filed a "Demand for Payment Obligation of the United States and Georgia," making arguments suggestive of sovereign citizen theories and demanding Defendant reply to Plaintiff's filings.  (Doc. nos. 53, 55).  Plaintiff opposes the nonsensical motion, (doc. no. 54), and it is due to be dismissed along with this case.  See United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (rejecting sovereign citizen-esque legal theories as frivolous).

In accordance with Local Rule 56.1, Defendant Williams submitted a Statement of Material Facts ("SMF") in support of his summary judgment motion.  (Doc. no. 45-2.)  Though Plaintiff filed a responsive statement of material facts, his filing does not respond to each fact in the SMF and consists of unsworn, conclusory allegations.  (Doc. no. 49.)  Because Plaintiff did not contradict Defendant's factual assertions with any evidence or affidavits as contemplated by Federal Rule of Civil Procedure 56,[4] the Court deems admitted all portions of Defendant's Statement of Material Facts having evidentiary support in, and not otherwise contradicted by, the record.  See Fed. R. Civ. P. 56 (requiring citations to particular parts of materials in record, and affidavits or declarations used to oppose summary judgment motion made on personal knowledge, set out facts admissible in evidence, and show competency to

---

[3]The Motion to Dismiss simply restates Plaintiff's arguments from his Statement of Material Facts.  (Compare doc. no. 49 with doc. no. 50.)

[4]Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(1) & (4).

testify); see Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement). However, this does not automatically entitle Defendant to summary judgment because as the movant, he continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTS

The events giving rise to this lawsuit occurred while Plaintiff was in segregation at Wheeler on February 17 and 18, 2019. At the time, Defendant was a correctional officer at Wheeler serving a night shift in the segregation unit.

### A. The February 2019 Incident

The details of the February incident are largely undisputed. Prior to August 2018, Plaintiff was incarcerated at Lee State Prison. (Udell Dep., p. 14.)[5] Plaintiff suffers from chronic back pain stemming from arthritis. (Id. at 32.) Plaintiff described the pain as getting worse while working on details at Lee State Prison, though the pain was not constant and he was able to continue working on details with the assistance of medication, a back brace, and a pillow wedge and donut pillow when sleeping or sitting. (Id. at 33-34.) Medical personnel

---

[5]Defendant has only provided excerpts of Plaintiff's January 24, 2022 deposition. The Court cites to the page numbers provided by Defendant.

from Lee State Prison issued him several medical profiles, including a bottom bunk profile. (Id. at 33-34, 38.) In August 2018, Plaintiff was transferred to Wheeler, but he did not ask for his bottom bunk profile to be reinstated or renewed at Wheeler because he believed the bottom bunk profile automatically carried over to Wheeler from Lee State Prison. (Id. at 39-42, 60.) Instead, Plaintiff visited Wheeler's medical department once before February 2019 to only complain of back pain, and he was prescribed pain medicine and told to return if symptoms worsened. (Doc. no. 45-7, Ex, E; Udell Dep., p. 44.) Plaintiff did not return to medical. (Udell Dep., p. 44.) Plaintiff was able to keep his pillow wedge at Wheeler. (Id. at 44.)

On January 10, 2019, Plaintiff was placed in segregation at Wheeler, and on February 17, 2019, was assigned a cellmate. (Id. at 50-51.) Plaintiff was using the bottom bunk but his new cellmate claimed to have a bottom bunk profile. (Id. at 51.) When a corrections officer came to Plaintiff's cell that day, Plaintiff told the officer both he and his cellmate had bottom bunk profiles. (Id. at 52.) The officer explained his shift was ending, and Plaintiff should raise the issue with a night shift officer instead. (Id.)

Defendant later came by Plaintiff's cell as the night shift officer, and Plaintiff told him both he and his cellmate had a bottom bunk profile. (Id.) Defendant asked Plaintiff to show him his profile, so Plaintiff presented his offender management system ("OMS") schedule that listed a bottom bunk profile. (Id.) Defendant viewed the OMS schedule and called Nurse Wilkes. (Id.) Two minutes passed, and Nurse Wilkes called Defendant back and said Plaintiff did not have a bottom bunk profile at Wheeler, his cellmate did have a bottom bunk profile, and Plaintiff had to take the top bunk. (Id. at 52-53, 57.) Defendant relayed this information to Plaintiff and ordered Plaintiff and his cellmate to switch beds. (Id. at 57.) Plaintiff protested

5

and showed Defendant the OMS schedule again, but he eventually complied and took the top bunk. (Id. at 57, 59.)

The next morning, February 18, 2019, around 7:00 a.m., Plaintiff prepared to get out of bed. (Id. at 62.) He jumped off the top bunk from a seated position, did not pay attention to where he would land, and landed his right foot on his shower shoe causing him to fall backwards, his back and rear hitting the floor. (Id. at 62-63, 65.) Plaintiff explained he jumped off the top bunk that morning because "that's the only way you can get down off a bunk" and "some inmates don't like you coming down and putting your foot on the side of their beds." (Id. at 62.) He admits he would have climbed down the bed but for the risk of angering his cellmate by stepping on his bed. (Id. at 62-63.) As a result of the fall, Plaintiff experienced pain in his back, neck, and entire right side that extremely inhibited his movement. (Id. at 63.) Plaintiff's cellmate called for Correctional Officer Stewart, whose supervisor called medical. (Id. at 66.) Plaintiff was taken to medical on a stretcher but had no visible injuries. (Doc. no. 54-3, Ex. A, p. 1; Udell Dep., p. 66.) In his complaint, Plaintiff alleges he now suffers from spondylosis, also known as spinal osteoarthritis, and he walks with a cane. (Doc. no. 7, p. 7.)

Plaintiff filed a grievance on February 22, 2019, concerning Defendant's and Wilkes' actions, and argued, "if Mr. Wilkes would have not lie[d] about the profile[,] this incident would not [have] happened to me." (Ex. A, p. 1.) The grievance was denied initially and on appeal, where Wheeler's grievance coordinator explained, "You did not have an order for a bottom bunk profile at Wheeler . . . when Nurse Wilkes called and advised [Defendant] to move you to the top bunk . . . . Your grievance is found to be without merit." Id. Plaintiff was subsequently issued a bottom bunk profile at Wheeler. Id.

B.     **Plaintiff's Bottom Bunk Profile**

Defendant has provided a declaration by Dr. Yvonne Neau, the medical director at Wheeler during all times relevant to Plaintiff's claims.  (Doc. no. 45-5, Ex. C, Neau Decl.) Two months after Plaintiff arrived at Wheeler, Dr. Neau performed a chart review of Plaintiff's medical file on October 5, 2018.  (Id. at ¶ 5.)  When a new inmate with a bottom bunk profile from another facility arrives, Wheeler's medical staff are not obligated to maintain that profile. (Id. at ¶ 7.)  Further, only doctors, physicians' assistants, and nurse practitioners are authorized to issue bottom bunk profiles at Wheeler; correctional officers like Defendant cannot issue profiles and do not have access to inmate's medical charts and profiles.  (Id. at ¶¶ 14-16.) Officers must rely on the judgment and instructions of medical staff when determining whether an inmate should sleep in a bottom bunk.  (Id. at ¶¶ 20-22.)

After review of Plaintiff's medical records in October 2018, Dr. Neau used her training and professional judgment to determine Plaintiff did not require a bottom bunk profile.  (Id. at ¶¶ 6, 8)  Plaintiff also did not request a bottom bunk profile before February 18, 2019, when he jumped off the top bunk.  (Id. at ¶ 9.)  He was seen by a registered nurse on November 23, 2018, to discuss his back pain, but there is no record of him requesting or receiving a bottom bunk profile.  (See Ex. E.)  Accordingly, Plaintiff's medical chart at Wheeler did not contain a bottom bunk profile before February 18, 2019.  (Neau Decl., ¶¶ 9-13.)  When Nurse Wilkes checked Plaintiff's profile in response to Defendant's inquiry on February 17, 2019, there was no bottom bunk profile listed for Plaintiff, and Nurse Wilkes correctly informed Defendant of the same.  (Id. at ¶ 12.)

Defendant has also produced the OMS schedule Plaintiff presented to Defendant as proof of his bottom bunk profile.  (Doc. no. 45-6, Ex. D.)  The OMS is not a medical document.

7

(Neau Decl., ¶ 11.) It was issued to Plaintiff by Wheeler on December 18, 2018, contains his weekly scheduled activities, and lists under "Profiles":

| Start Date | End Date | [unreadable] Description |
|---|---|---|
| 07/10/2018 | 07/10/2019 | SAFETY PROFILE: BOTTOM BUNK |

(Ex. D.) Dr. Neau explains "the profile was likely listed only as carry over from Plaintiff's previous facility and does not mean that Plaintiff had a bottom bunk profile at Wheeler." (Neau Decl., ¶ 10.)

In his statement of material facts, Plaintiff states he did have an active bottom bunk profile at Wheeler on January 17, 2019, as evidenced by the OMS schedule. (Doc. no. 49, ¶ 23.) Citing nothing, Plaintiff explains OMS schedules are the only documents other than institutional and medical files that list an offenders complete program assignments, medical profiles, and bed assignments. (Id. at ¶ 8.) When the prison receives new information concerning a prisoner's medical needs, they update the OMS schedule. (Id. at ¶ 9.) A prisoner is provided a copy of his up-to-date OMS schedule every ninety days. (Id. at ¶ 10.) If Dr. Neau decided Plaintiff did not require a bottom bunk profile on October 5, 2018, she "would have placed a notation in [Plaintiff's] medical file that day. (Id. at ¶ 13.) However, when Laurie Botello, who works in Wheeler's administration, printed out an updated OMS schedule for Plaintiff on December 28, 2019—two months after Dr. Neau's review of Plaintiff's medical file—the OMS schedule still listed a bottom bunk profile for Plaintiff with his bunk assignment, as shown above. (Id. at ¶ 15-17.) Plaintiff theorizes if Dr. Neau had actually determined Plaintiff did not require a bottom bunk profile, then a bottom bunk profile would not be listed on his December OMS schedule. (Id. at ¶ 27.) He concludes, "There was no

order discontinuing Plaintiff's bottom bunk profile, and his bottom bunk profile was indeed active at the time Defendant instructed Plaintiff to move to the top bunk." (Id. at ¶ 32.)

Plaintiff's statements of material fact relating to OMS schedules and whether he had an active bottom bunk profile at Wheeler contain no specific citations to evidence, in contravention of Rule 56. Williams, 438 F. App'x at 849-50.

### III. DISCUSSION

Plaintiff alleges Defendant was deliberately indifferent to Plaintiff's serious medical needs when Defendant "forced [Plaintiff] to move to the top bunk" and "blatantly disregard" Plaintiff's bottom bunk profile. (Doc. no. 7, p. 6.) Plaintiff claims Defendant's deliberate indifference resulted in "irreparable injury" and spondylosis. (Id. at 7.) Defendant, in response, argues that Plaintiff had no objectively serious medical need for a bottom bunk profile, Defendant did not disregard any excessive risk to Plaintiff's safety by commanding Plaintiff to move to the top bunk, and Defendant's actions were not the proximate cause of Plaintiff's injuries. (Doc. no. 45-1, pp. 13-18.) For the reasons stated below, the Court agrees with Defendant.

    **A.    Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable

jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.

### B.    Deliberate Indifference to a Serious Medical Need

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that:  (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee Cty., 510 F.3d 1312, 1326

(11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010). To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component, Plaintiff must allege that a defendant (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-

72 (11t Cir. 1990) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

The Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

### C. Defendant Is Entitled to Summary Judgment Because the Undisputed Facts Show Defendant Did Not Act With Deliberate Indifference, And No Reasonable Juror Could Disagree

The Court need not determine whether the scant evidence available concerning Plaintiff's back pain satisfies the objective component of constituting a serious medical need because Defendant clearly did not act with deliberate indifference, the subjective component. In order to show deliberate indifference, Plaintiff must at least show Defendant knew he had a serious medical need requiring a bottom bunk, yet intentionally kept Plaintiff in a top bunk. See Burley, 257 F. App'x at 210 (finding no deliberate indifference without evidence prison officials knew inmate needed bottom bunk); Holman v. Jones, No. 2:14-cv-115, 2017 WL 1349182, at *10-11 (M.D. Ala. Feb. 21, 2017) (granting summary judgment against plaintiff because he failed to "inform the segregation officers of his bottom bunk profile or his potential for a seizure"), *adopted by* 2017 WL 1352221 (M.D. Ala. Apr. 10, 2017). Placement in a top bunk to due to negligence or "bureaucratic misunderstandings" does not violate the Eighth

12

Amendment. Redding, 557 Fed. App'x. at 844; Burley, 257 F. App'x at 210.

Even if one assumes Plaintiff had an active bottom bunk profile at Wheeler on February 17, 2019, which is doubtful at best, Defendant's actions do not constitute medical indifference. When faced with what appeared to be competing bottom bunk profiles by cellmates, Defendant did not recklessly order Plaintiff to take the bottom bunk. Instead, it is undisputed he contacted Nurse Wilkes, who informed Defendant that Plaintiff did not have a bottom bunk profile. Even if this was wrong, it was not reckless for Defendant to rely on this information and order Plaintiff to sleep on the top bunk. Only medical staff can issue bottom bunk profiles, and Defendant did not have access to Plaintiff's medical records. No reasonable juror would disagree with this finding based on the undisputed facts. Case law is clear that "Prison officials are entitled to rely on the opinions, judgment, and expertise of a prison medical staff to determine a medically necessary and appropriate cause of treatment for an inmate." Baker v. Pavlakovic, No. 4:12-CV-03958-RDP, 2015 WL 4756295, at *7 (N.D. Ala. Aug. 11, 2015) (citing Williams v. Limestone Cnty., Ala., 198 F. App'x 893, 897 (11th Cir. 2006)); See Est. of Miller by Chassie v. Marberry, 847 F.3d 425, 428 (7th Cir. 2017) (finding no liability when defendant was not an officer with bunk-assigning duties or access to the bunk assignment database).

This reasoning cannot be a surprise to Plaintiff because he acknowledged Defendant is not truly responsible when seeking to amend his complaint to add Nurse Wilkes as a defendant. Plaintiff stated, "Wilkes is the sole reason for the claim of deliberate indifference." (Doc. no. 31.) Considering the undisputed facts before the Court, Plaintiff's claims should also be denied as he has not and cannot prove deliberate indifference on the part of Defendant.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECCOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 45), Plaintiff's motion to dismiss be **DENIED**, (doc. no. 50), Plaintiff's motion for Payment Obligation be **DENIED**, (doc. no. 53), a final judgment be **ENTERED** in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 3rd day of October, 2022, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA